306

[Civ. No. 5233.   Third Appellate District.—March 18, 1935.]

JOHN D. ROY, Administrator, etc., Appellant, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Respondent.

Robert H. Schwab, Thomas J. Horan and Thomas F. O'Hara for Appellant.

Thomas J. Straub, W. H. Spaulding, Clinton F. Stanley and W. U. Goodman for Respondent.

PLUMMER, J.—This cause is before us upon an appeal from the order of the court granting a new trial after verdict and judgment based thereon in favor of the plaintiff.

The complaint alleges that on and prior to the nineteenth day of November, 1930, Fern Mildred Roy, deceased, was a tenant of apartment No. 5 in a certain building known as "Bay View Court Apartments", located at 215 York Street, in the city of Vallejo. The apartment consisted of a living-room, kitchenette, bedroom and bath. One entering the apartment would enter the living-room, pass through the kitchenette and enter the bedroom. The complaint sets forth that the deceased came to her death by reason of the escape of monoxide gas from a gas furnace installed in the floor of the living-room.

On the nineteenth day of November, 1930, Mrs. Roy lighted the gas furnace in the living-room, went through the kitchenette into the bedroom, lay down upon the bed, apparently for the purpose of reading, and while lying there, it is alleged, was overcome by carbon monoxide gas, and died from the effects thereof.

The furnace was equipped with vent-pipe which connected with the outside of the apartment for the purpose of permitting the escape of gas from the furnace. Prior to the fifth day of November, 1930, artificial gas was the fuel used in heating the apartments. On or about the fifth day of November, 1930, the defendant changed the artificial gas supply to said apartment and substituted natural gas, and at about the same date an agent of the company visited the apartments and adjusted the orifice of the furnace, rendered necessary by the substitution of natural for artificial gas as the fuel to be burned in the furnace.

The complaint then sets forth the plaintiff's cause of action as follows:

"VI.

"That said defendant Pacific Gas and Electric Company was in exclusive control of the plant distributing said

natural gas during all the times it was so supplying said natural gas to the residents of the city of Vallejo and of the character, pressure and flow of said natural gas. That the only persons who had control of the flow of said gas were the said Fern Mildred Roy and said Pacific Gas and Electric Company, and that from the time Fern Mildred Roy turned on said gas and lighted said burner of said gas furnace until her death the said Pacific Gas and Electric Company had exclusive control of the flow of said gas as well as its character and pressure under which it was delivered.

"VII.

"That on said 19th day of November, 1930, and a short time before the death of Fern Mildred Roy, as herein alleged, she lighted said gas furnace in order to heat said apartment. That said gas furnace continued to burn from the time Fern Mildred Roy lighted the same until after her death when said gas furnace was extinguished by another person. That after Fern Mildred Roy had lighted said gas furnace in said living-room she went to her bedroom and lay down upon her bed for the purpose of reading. That while she was so lying upon her bed she was overcome by carbon monoxide gas and died therefrom.

"VIII.

"That said defendant, Pacific Gas and Electric Company, so negligently and carelessly supplied said natural gas to said apartment for use in said furnace so that said carbon monoxide gas was created by burning said natural gas through the burners as installed by said Pacific Gas and Electric Company in said gas furnace in said apartment. That said carbon monoxide gas was created to such an extent that said Fern Mildred Roy died from the effects thereof.''

The deceased left her surviving a husband, the plaintiff herein, and a minor son named Clarence D. Roy, neither of whom were living with the deceased.

The order of the court granting a new trial, omitting the title, is in the following words:

"It is ordered in the above entitled cause that the motion of the defendant, Pacific Gas and Electric Company, a corporation, for a new trial be, and the same is granted, and particularly upon the ground of insufficiency of the evidence

to sustain the verdict.'' The verdict was in favor of the plaintiff, awarding damages in the sum of $10,000.

It is admitted that the defendant was in sole charge of the plant furnishing natural gas to the apartment, and that on or about the fifth day of November, 1930, an agent of the company adjusted the orifice of the burners in the furnace so that natural gas could be burned therein. There is nothing in the testimony as to who installed the gas furnace, or that anyone other than the tenant had charge or control thereof. As set forth in the sixth paragraph of the complaint, Fern Mildred Roy had control of the flow of gas in said furnace prior to the actual time of turning on the gas and lighting the same, and that thereafter the defendant had exclusive control of the flow of said gas, as well as its character, and pressure under which it was delivered. The eighth paragraph of the complaint charges the defendant with negligently and carelessly supplying natural gas through the burners as installed by the defendant, so that carbon monoxide gas was formed after the gas supply through the furnace had been lighted. There is nothing in the testimony showing installation of the burners in the gas furnace, by the defendant or anyone else. All that the defendant had to do with the furnace was in adjusting a small contrivance called the ''orifice'', which regulates the quantity of air being added to the gas, or to the flame after the furnace is lighted. There does not appear to be anything in the pleadings or in the testimony to the effect that there was any negligence on the part of the agent of the defendant in adjusting the instrumentality called the ''orifice''. Under such circumstances the complaint showing by the sixth paragraph thereof that the deceased had control of the flow of gas in the furnace preceding the time of lighting the same, and in the absence of any allegation in the complaint as to any negligence with reference thereto, we do not very well perceive how the doctrine of *res ipsa loquitur* has any application as to the furnace or any adjustment made thereof. The testimony is entirely wanting as to any negligence in relation to the furnace or any adjustment thereof. The court, in relation to this subject, instructed the jury as follows:

''You are instructed that when the defendant, Pacific Gas and Electric Company, assumed the obligation of adjusting

the orifice of the burner in said furnace, it assumed the obligation to provide skilled workmen to do such work and to use, in making the adjustment, the ordinary care and prudence that are required for such work that it had undertaken to do.''

The testimony is silent as to whether the workman so furnished by the defendant was or was not sufficiently skilled in that line of work. Nor is there any allegation in the complaint that the workman so supplied by the defendant was either negligent or unskilful.

We do not need to enter into discussion or an analysis of the cases as to when the doctrine of *res ipsa loquitur* applies, as there does not appear to be any great divergence between counsel as to its having application in this case, particularly as to the allegation of negligence in controlling the flow of gas furnished to the apartment in question, and whether there is sufficient testimony in the record in relation thereto, as well as to the causes which led to the death of Mrs. Roy justifying the trial court in awarding defendant a new trial.

■ The appellant's claim is based exclusively upon the theory that Mrs. Roy met her death through the inhaling of monoxide gas. While from the typewritten pages of the transcript it might appear that the preponderance of the testimony favored this theory, there are certain factors in relation thereto which may well have influenced the trial court in passing upon the defendant's motion for a new trial.

We have already described the relation of the respective rooms in the apartment. The testimony shows that a witness by the name of Beck, a policeman of the city of Vallejo, entered the apartment at about 7:45 P. M. on the nineteenth day of November, 1930; that the furnace was still burning, that either he or a sailor who accompanied him shut off the gas and extinguished the fire in the furnace; that at the time he entered the apartment the doors were closed and also the windows were all closed; that he did not notice anything peculiar in the apartment save the excessive heat. An autopsy was had on the body of the deceased at about 9:30 of the same evening. The physician in charge of the autopsy stated that Mrs. Roy had been dead from eight, ten to twelve hours. Thus, if the witness Beck entered the apartment at 7:45 P. M., the furnace had been burning

approximately eight hours, if we take the ten-hour estimate of the length of time Mrs. Roy had been dead preceding the autopsy.

The witness Peterson, a physician called by the defendant, testified that anyone entering a room where there was gas sufficient to cause the death of the deceased would become dizzy and faint, and "if they did not get out, they would probably die". The physician called by the plaintiff, and who made the autopsy which we have mentioned, testified that the deceased came to her death by inhaling monoxide gas. This witness testified that the autopsy revealed that the deceased had some heart trouble, and that there was a tumor of considerable size in one of the organs of her body. It does not appear that there was an examination made of the contents of the stomach. The autopsy physician based his conclusions upon a certain blood test.

There is also testimony to the effect that cyanide poisoning would produce similar appearances upon the body that were found upon the deceased, the difference between the two poisons being that by the use of cyanide poisoning retching and vomiting would follow. The physician called by the defendant also testified that it could not be ascertained whether Mrs. Roy came to her death by being poisoned without a chemical analysis of the stomach.

The foregoing testimony presented sufficient uncertainties as to the real cause of the death of Mrs. Roy as to call for the exercise of the discretion of the trial court who heard the witnesses, to determine whether Mrs. Roy's death had in fact been occasioned by monoxide poisoning.

■ Before taking up the testimony as to the supply of gas, we may refer to the testimony of A. E. Englebright, division superintendent of the gas department, who testified that he had been told that an agent of the company called at the apartment occupied by the deceased, on the 18th or 19th of November, 1930, for the purpose of examining the adjustment of the gas furnace. Whether any readjustment was made is left uncertain. At least there is nothing in the record alleging or showing any negligence in relation thereto. The supply of gas and the force used or the pressure under which the gas was furnished to the apartment is shown by the testimony of Louis N. Pechette, a witness for the defendant who had charge of the same. His testi-

mony is to the effect that he had acted in that capacity for a trifle over fourteen years, and that a record was kept of the pressure under which the gas was furnished, to different consumers, at all times. This witness produced in court the charts taken of the pressure of gas as furnished to the apartment occupied by the deceased on November 19, 1930. One of the instruments for registering the gas pressure was situate about two and one-half blocks distant from the apartment occupied by the deceased. The pressure maintained by the company was approximately one-third of a pound or 9½ inches to 10 inches of water column. The water column is explained as follows: A pound pressure would cause the water column to rise 27 inches. The pressure furnished was constant. It is the pressure exerted by the metal disc or covering in the tank or gasometer in which the gas is collected, and this pressure is shown by the testimony to be practically unvariable, the variation being so slight as to be absolutely negligible. The chart, which is made by an instrument drawing lines, indicated that the gas pressure, on the nineteenth day of November, 1930, was as follows: Minimum, slightly less than 10 inches; maximum pressure, approximately 10.1 inches, being, in other words, approximately one-third of a pound. This chart was made at some distance from the apartment occupied by the deceased. The lines drawn by the instrument situate about two and one-half blocks from the apartment occupied by the deceased, showed a variation so slight that, to use the language of the witness, "it could not be picked off the chart".

This testimony was sufficient to justify the trial court in holding that the doctrine of *res ipsa loquitur* imputing negligence to the defendant in its supply of gas to the apartment in question, had been fully met and refuted. If we assume that the doctrine of *res ipsa loquitur,* as contended for by the appellant, applies to the adjustment of the orifice controlling the quantity of air passing into and intermingling with the gas in order to produce a proper flame, a sufficient showing is otherwise made supporting the order granting a new trial, precluding any interference therewith on the grounds of an abuse of discretion by this court.

■ While the respondent has urged that the damages awarded were excessive, and cited cases to the effect that

where a new trial is granted upon that ground the court may examine the testimony to determine whether the award is excessive, those cases are not pertinent here, for the simple reason that the court specifically pointed out the grounds upon which it granted a new trial. We may call attention, however, to the fact that the testimony in this case is entirely wanting as to how long the deceased and the plaintiff in this action had been living separate and apart, or whether their separation was only temporary or permanent. Hence, the cases cited by respondent, where the separation appears to have been permanent or long-continued need not be considered.

In examining the instructions given by the trial court on the subject of damages, we have discovered no error, nor has any error in relation thereto been called to our attention. As the question of excessive. damages is not determinative of this appeal, and as, upon a new trial other damages may or may not be awarded, a discussion thereof here would serve no useful purpose, as what we have stated necessitates upholding the order of the trial court.

It is therefore ordered that the order of the trial court awarding the defendant a new trial be and the same is hereby affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 17, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 16, 1935.